# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CAUSE NO.: 1:08-CR-95-TLS |
| | ) | |
| DEMARCUS JOHNSON | ) | |

## OPINION AND ORDER

Before the Court is a Motion to Suppress Evidence [DE 25], filed on February 11, 2009. The Defendant, Demarcus Johnson, asks the Court to exclude evidence that the police recovered during a vehicle search on November 18, 2008, in the parking lot of Showgirl III, a gentlemen's club located in Fort Wayne, Indiana. The Defendant argues that the police searched the vehicle, of which he was the sole occupant, without justification or authority, because they did not have probable cause and because the search and the seizure were outside the area within the Defendant's immediate control. Also before the Court is the Defendant's Motion to Dismiss [DE 75], filed on May 3, 2010. The Motion to Dismiss asks the Court to dismiss the Indictment in this cause on the ground that the Government failed in its affirmative obligation to preserve exculpatory evidence. The Court also reviewed the Defendant's pro se Reply to the Government's Response to Defendant's Memorandum in Support of Motion to Suppress [DE 99], filed on August 23, 2010, but strikes the submission.

## BACKGROUND

The procedural history of this case is long and warrants a thorough recitation to provide context for the pending motions. On December 17, 2008, the Government charged the Defendant by way of a three-count Indictment [DE 7] with possessing crack cocaine with the intent to distribute,

carrying a firearm during and in relation to a drug trafficking crime, and being a felon in possession of a firearm. On February 11, 2009, the Defendant filed his Motion to Suppress [DE 25]. The Government filed its Opposition [DE 27] on February 17, and the Court scheduled an evidentiary hearing with agreement of the parties.

On May 7, the Court continued the Evidentiary hearing scheduled for that day because the Defendant advised that he had newly discovered evidence and needed time to review that evidence. The Court rescheduled the hearing for July 23, 2009. The Court continued the hearing to October 29, 2009, upon the Defendant's Motion [DE 35], in which the Defendant stated that he needed more time to pursue an evidentiary matter before he could appear at the hearing. On September 15, the Defendant filed a Motion to Inspect Government's Evidence [DE 37], alerting the Court that the Defendant's vehicle was not available, and requesting that the Court order the Government to find the car and provide for its inspection. The Court held a series of five telephone status conferences [DE 40, 41, 46, 49, and 53], all relating to the parties' inability to locate the missing vehicle. The Court advised the parties that the Evidentiary hearing would go forth as planned on December 16, and the missing automobile would be considered along with all the other evidence presented in making its ruling.

On December 15, the Defendant's attorney, Harold Myers, filed a Motion to Withdraw [DE 58], citing a breakdown in communication with the Defendant. On December 16, the Court held an in-person hearing with Attorney Myers, the Defendant, and counsel for the Government. The Defendant advised the Court that he wanted Attorney Myers to withdraw his representation and that he wanted new counsel appointed. The Court granted Attorney Myers's motion and continued the Evidentiary hearing to January 28, 2010. On December 16, Attorney Thomas O'Malley entered

2

his appearance on behalf of the Defendant.

The Court granted two more continuances, one requested by the Defendant and one by the Government, both based on counsels' availability. The Court held the Evidentiary hearing on March 31, 2010. Each side presented evidence and examined the following witnesses: Officer Nicholas Lichtsinn—First officer at the crime scene; Officer Ronald Coffelt—Second officer at the crime scene; Al Butler—Showgirl III Manager; and Raul Resendiz—Showgirl III customer. At the conclusion of the proceeding, the Court continued the hearing until April 15 to allow the Defendant to examine witnesses who were unavailable on March 31. However, on April 6, Attorney O'Malley filed a Motion to Withdraw [DE 68], citing a complete breakdown in his relationship with the Defendant. The Court granted the Motion. On April 12, Attorney Linda Wagoner filed her appearance on behalf of the Defendant.

On May 3, the Defendant filed his Motion to Dismiss [DE 75]. In a May 7 telephone status conference [DE 77], the Court set a briefing schedule on the Motion to Dismiss. That Motion is now fully briefed and ripe for ruling.

On May 13, Attorney Wagoner filed a Motion to Withdraw [DE 81], citing a breakdown in communication with the Defendant. In a June 9, in-person motion hearing, the Court denied the Motion to Withdraw and set June 24 as the date to continue with the Evidentiary hearing. On June 24, the Evidentiary hearing resumed, with both sides presenting additional evidence on the Motion to Suppress and the Motion to Dismiss and examining the following witnesses: Demarcus Johnson—Defendant; Detective Christopher McCarty—Officer in charge of executing judgment against the Defendant's vehicle; Lon White—Showgirl III Customer; and reexamining Officer Nicholas Lichtsinn. The Court then set a briefing schedule on the Motion to Suppress. The

Defendant filed his Memorandum in Support [DE 96] on July 16. The Government filed its Response [DE 98] on July 30. The Defendant did not file a reply by the August 6 deadline ordered at the Evidentiary hearing on June 24, 2010 [DE93]. The Defendant, acting pro se, filed a Reply on August 23, 2010 [DE 99], which the Court strikes for the reasons set forth below. The Motion is now ripe for ruling.

**FINDINGS OF FACT**

Upon consideration of the testimony of the witnesses and the exhibits admitted during the Evidentiary hearing, the Court makes the following findings of fact.

On November 18, 2008, Fort Wayne Police Department Officer Nicholas Lichtsinn was on patrol, wearing a full police uniform and driving a marked police car. It was Officer Lichtsinn's practice while on patrol to occasionally drive through the parking lot of Showgirl III. This was his custom because he knew the establishment to be a haven for drug use and prostitution. According to Butler, Showgirl III's Manager, and Officer Lichtsinn, the club's owner knew about and agreed to Lichtsinn's practice. While driving through the parking lot on that night, Officer Lichtsinn observed a light-colored Pontiac Bonneville (the Bonneville or the vehicle) with its headlights on idling in the parking lot. Officer Lichtsinn exited the parking lot and returned a few moments later to a spot in the parking lot where he could observe the Bonneville but remain unobserved himself. He watched the Bonneville for a short period of time and noticed that no person entered or exited the vehicle. Officer Lichtsinn exited his patrol car and walked toward the Bonneville.

Officer Lichtsinn approached the vehicle from the rear passenger side and saw only one person, later identified as the Defendant, sitting in the Bonneville. After reaching the front

4

passenger side of the Defendant's car, Officer Lichtsinn shined his flashlight into the car. The Defendant immediately glanced down, and Officer Lichtsinn followed the Defendant's gaze with his flashlight and observed what he believed to be the magazine end of a handgun. Officer Lichtsinn also observed a white, powdery rock substance on the front passenger seat. Then, Officer Lichtsinn tapped the passenger side front window with his flashlight. The Defendant rolled down the window, and Officer Lichtsinn shined his flashlight into the car. Lichtsinn asked the Defendant if there were any weapons in the vehicle, to which the Defendant responded that there were not. Without telling the Defendant that he had seen what appeared to be a handgun and what appeared to be drugs, Officer Lichtsinn asked the Defendant to put his hands on the steering wheel. Officer Lichtsinn then walked behind the Bonneville while moving to the driver's side of the vehicle and asked the Defendant to exit the car. The Defendant complied, and Officer Lichtsinn handcuffed the Defendant and patted him down for weapons.

While Officer Lichtsinn was handcuffing and patting down the Defendant, Officer Coffelt, a Fort Wayne Police Department K-9 Officer, arrived on the scene. Officer Coffelt watched the Defendant while Officer Lichtsinn entered the vehicle and confirmed that what he had seen was indeed a handgun. Officer Lichtsinn then placed the Defendant in the back of his squad car. Officer Coffelt ran a computer check and determined that the Defendant was a "serious violent felon."[1] Officer Lichtsinn then searched the rest of the vehicle and found a plastic bag with six grams of marijuana in the center console. In the glove box, Officer Lichtsinn found the same white, powdery rock substance that he had seen on the front passenger seat inside a crown royal bag. The substance

---

[1] Officer Lichtsinn and Coffelt testified that the computer system Officer Coffelt checked listed the Defendant as a "serious violent felon." The Court takes this testimony to indicate that the Defendant qualified as a "serious violent felon" under the Indiana Code. Ind. Code § 35-47-4-5.

field tested positive for cocaine.

During the course of the investigation, the police took several pictures of the Defendant's vehicle, each of which show the level of tint on the Bonneville's windows. Each picture, including one taken in a dark setting, shows that the windows had some degree of transparency, even with the tint. The actual windows from the Bonneville were not presented as physical evidence.

**DISCUSSION**

The Fourth Amendment to the United States Constitution protects people from unreasonable searches and seizures. U.S. Const. amend. IV (guaranteeing the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures"). However, the Fourth Amendment is not necessarily triggered by every interaction between citizens and police officers. *United States v. Drayton*, 536 U.S. 194, 200 (2002).

**A.     Initial Police Contact**

The Defendant argues that he was seized when Officer Lichtsinn approached his car and Officer Lichtsinn did not have reasonable suspicion to complete a *Terry* stop. *Terry v. Ohio*, 392 U.S. 1 (1968). The Government responds that the Defendant was not seized during his initial encounter with Officer Lichtsinn for the purposes of the Fourth Amendment. This case presents a question as to when an individual is seized, which requires considering "whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *Florida v. Bostick*, 501 U.S. 429, 439 (1991). The Seventh Circuit provides the following factors to consider in determining whether a seizure has occurred: "whether the encounter took place in a

6

public place or whether police removed the person to another location; whether the police told the person he was not under arrest and was free to leave; whether the police informed the person that he was suspected of a crime or the target of an investigation; whether the person was deprived of identification or other documents without which he could not leave (such as a driver's license or train or airline ticket); and whether there was any limitation of the person's movement such as physical touching, display of a weapon, or other coercive conduct on the part of the police that indicates cooperation is required." *United States v. Tyler*, 512 F.3d 405, 410 (7th Cir. 2008). An individual is not necessarily seized when an officer approaches the individual while he is sitting in his car. *United States v. Douglass*, 467 F.3d 621, 624 (7th Cir. 2006).

When Officer Lichtsinn approached the Defendant's car and spoke to the Defendant through the window it did not constitute a seizure. *See United States v. Williams*, 495 F.3d 810, 815 (7th Cir. 2007) ("[t]here is no legitimate expectation of privacy . . . shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers.") (quoting *Texas v. Brown*, 460 U.S. 730, 740 (1983)). Before exiting his vehicle, Officer Lichtsinn parked his squad car so that it was not visible to the Defendant. Government's Exhibit 3A and the Defendant's Exhibit A3 show that the Defendant would have been unable to see Officer Lichtsinn's squad car because it was around the corner of the Showgirl III's building. Also, Officer Lichtsinn testified that he parked his squad car about ten to fifteen feet from the Defendant's vehicle. (Tr. 36, 23–25.) Therefore, the location and the position of Officer Lichtsinn's police car are not enough to constitute a seizure just as the location of the officer's car fifteen to twenty feet away from the defendant's car in *Douglass* was not enough to constitute a seizure. *Douglass*, 467 F.3d at 624. While the squad car in *Douglass* may have been slightly farther

7

away than in this case, the court emphasized that the squad car's location is most important to determine if its placement would cause the Defendant to believe that he was not free to leave. *Id.*; *see also United States v. Hendricks*, 319 F.3d 993, 1001 (7th Cir. 2003) (holding that there is no seizure where an officer parks his squad car behind an individual in a manner that does not block the individual's exit).

The Defendant cites *Ornelas v. United States* for the proposition that Defendant was seized when Officer Lichtsinn approached the Defendant's vehicle. 517 U.S. 690, 693 (1996); (Def.'s Mem. in Supp. of Mot. to Suppress [DE 96] at 4).[2] This case is distinguishable from *Ornelas* where the officers parked their squad cars on either side of the vehicle in question, leading the government to concede that a reasonable person would not feel free to leave. 517 U.S. 690, 693 (1996); *see United States v. Ornelas-Ledesma*, 16 F.3d 714, 716 (7th Cir. 1994), *vacated*, 517 U.S. 700, *remanded to* 96 F.3d 1450 (7th Cir. 1996). Officer Lichtsinn parked his squad car outside the view of the Defendant, which is distinguishable from how the officers in *Ornelas-Ledesma* positioned their vehicles, and shows that the Defendant was not seized on the basis of Officer Lichtsinn's squad car position.

The Defendant also relies on *United States v. Jerez* in asserting that a reasonable individual sitting in a parked car would not feel free to leave once an officer knocked on the window. 108 F.3d 684, 690–91 (7th Cir. 1997). The court in *Jerez* discussed at some length the fact that "our law and legal traditions long have recognized the special vulnerability of those awakened in the night by a police intrusion at their dwelling place." *Id.* at 690. The Defendant was in his vehicle and not in a

---

[2] The Court strikes the Defendant's pro se Reply [DE 99]. However, even if it considered the Defendant's extensive treatment of *Ornelas* it would not change the Court's analysis.

dwelling place. Also, the *Jerez* court distinguished between two approaches for determining whether an individual has been seized. *Id.* at 689. The first, is when an officer approaches an individual in a public place, and the second is when an officer approaches an individual in a confined space. *Id*. This case is properly analyzed under the first approach because Officer Lichtsinn approached the Defendant while the Defendant was in his vehicle in a parking lot, which was a public place. Therefore, the proper inquiry to determine whether the Defendant was seized is to consider whether a "reasonable person in similar circumstances would not have felt 'free to leave.'" *Id.*

An officer's actions may still constitute a seizure if an individual approached by the officer in a public place would not feel free to leave based on the officer's words or actions. *Drayton*, 501 U.S. at 200. The Court must determine whether "a reasonable person would feel free to terminate the encounter," given the officer's actions in a particular case. *Id.* at 201. After parking his squad car out of the Defendant's sight, Officer Lichtsinn approached the Defendant's vehicle. Once he reached the passenger side of the vehicle, Officer Lichtsinn shined his flashlight into the Defendant's car. The Defendant gazed down at what Officer Lichtsinn thought was the magazine end of a handgun. Officer Lichtsinn also observed a white, powdery rock substance on the passenger seat of the Defendant's car. At this point, Officer Lichtsinn tapped on the window and requested the Defendant roll the window down, and Officer Lichtsinn briefly spoke with the Defendant. At no point during this interaction did Officer Lichtsinn draw his weapon or restrict the Defendant's freedom of movement. Officer Lichtsinn's actions of shining a light into the Defendant's car and asking the Defendant a few questions did not constitute a seizure, just as the officers' shining a flashlight into the defendant's car and asking a few questions in *Douglass* did not

constitute a seizure. *Douglass*, 467 F.3d at 624.

This whole encounter took place in a public area, the Showgirl III parking lot. *Tyler*, 512 F.3d at 410 (citing *United States v. McCarthur*, 6 F.3d 1270, 1275–76 (7th Cir. 1993)). Consideration of the remaining *Tyler* factors also support the conclusion that the Defendant was not seized during the initial encounter with Officer Lichtsinn. The Defendant was not moved to another area until after he was arrested, Officer Lichtsinn asked whether the Defendant had any weapons in the car but did not tell him he was under arrest, and Officer Lichtsinn did not tell the Defendant he was under investigation or deprive him of necessary documentation.[3] *Id.* Also, there does not appear to have been any other coercive conduct at the time Officer Lichtsinn talked to the Defendant through the vehicle's window. *Id.* Therefore, Officer Lichtsinn did not seize the Defendant prior to seeing the gun and drugs through the open car window.

**B.     Search**

Although the initial encounter did not implicate the Fourth Amendment, the events on November 18, 2008, developed into a seizure of the Defendant and search of his car. The Court must determine whether Officer Lichtsinn validly searched the Defendant's vehicle. A search of an automobile incident to arrest is only valid when "the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *United States v. Stotler*, 591 F.3d 935, 939 (7th Cir. 2010)

---

[3] The Defendant testified that Officer Lichtsinn requested and took the Defendant's driver's license at the end of the initial encounter. However, this occurred after Officer Lichtsinn saw what he believed to be a gun and drugs through the car window. The issue is whether Officer Lichtsinn seized the Defendant before Officer Lichtsinn saw the gun and drugs, not what occurred after Officer Lichtsinn's observation.

(quoting *Arizona v. Gant*, 129 S.Ct. 1710, 1723 (2009)). In addition to searching an automobile incident to arrest, the police may also search an automobile "[i]f there is probable cause to believe a vehicle contains evidence of criminal activity." *Gant*, 129 S. Ct. at 1721 (citing *United States v. Ross*, 456 U.S. 798, 820–21 (1982)). Nothing in *Gant* altered any other exceptions to the Fourth Amendment outside of the search incident to arrest context. *Stotler*, 591 F.3d at 940.

If an officer has probable cause to believe that a vehicle contains contraband or evidence of illegal activity, the officer may conduct a warrantless search of that vehicle. *United States v. Washburn*, 383 F.3d 638, 641 (7th Cir. 2004) (citing *Maryland v. Dyson*, 527 U.S. 465, 466–67 (1999)). Generally, "[p]robable cause to search exists if, given the totality of the circumstances, there is 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Ledford*, 218 F.3d 684, 688 (7th Cir. 2000) (quoting *United States v. Young*, 38 F.3d 338, 340 (7th Cir. 1994)).

      The factual dispute in this case centers around what Officer Lichtsinn observed during his consensual encounter with the Defendant. Officer Lichtsinn approached the Defendant's vehicle from the rear and saw, with the aid of his flashlight, the Defendant siting inside the vehicle. Officer Lichtsinn testified that when he reached the passenger side, he followed the Defendant's gaze and observed a gun and white, powdery rock substance on the empty passenger seat. Next, Officer Lichtsinn tapped on the window, and the Defendant rolled the window down, and Officer Lichtsinn and the Defendant had a brief conversation during which Officer Lichtsinn inquired whether any weapons were in the vehicle. At the suppression hearing, the defense provided testimony by Mr. Resendiz, a Showgirl III customer, that he observed an officer peaking into the Defendant's car from the back right of the car. The Court did not find Mr. Resendiz's testimony credible because he

could not testify what day he was at Showgirl III and could not specifically recall any facts from November 18, 2008. Even if Mr. Resendiz's testimony were credible, it would not change the Court's analysis in this case because Mr. Resendiz could testify what he observed only during the short period of time it took him to enter the Showgirl III building. Even if Officer Lichtsinn stopped at the rear of the vehicle before proceeding to the passenger window, he still could have observed what he believed to be the gun and drugs before there was a seizure.

Given Officer Lichtsinn's observation of the magazine end of a gun and a substance he believed to be drugs, Officer Lichtsinn had probable cause to search the vehicle, as there was a fair probability it contained contraband.

Even if probable cause did not exist after Officer Lichtsinn observed what appeared to be a gun and drugs through the window, Officer Lichtsinn at least had reasonable suspicion to investigate further. Once an officer has reasonable suspicion that criminal activity is occurring the officer may initiate an investigatory stop. *United States v. Hampton*, 585 F.3d 1003, 1038 (7th Cir. 2009) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). An officer making a *Terry* stop "must be able to point to 'specific and articulable facts' that suggest criminality so that he is not basing his actions on a 'mere hunch.'" *Id.* Officer Lichtsinn observed what looked to him to be the magazine end of a gun and illegal drugs in the Defendant's vehicle. Therefore, Officer Lichtsinn had "specific and articulable facts" and had reasonable suspicion to investigate in order to confirm he had in fact observed a gun and drugs. *Id.*

After Officer Lichtsinn observed what he believed to be the magazine end of a gun, he asked the Defendant to place his hands on the steering wheel. Officer Lichtsinn then moved around the rear of the Defendant's vehicle to the driver's side. He asked the Defendant to exit the vehicle

and immediately placed him in handcuffs and passed the Defendant off to Officer Coffelt, who had just arrived on the scene as backup. At this point, Officer Lichtsinn removed the gun from the Defendant's vehicle, confirming that he had in fact seen a gun. Therefore, Officer Lichtsinn had probable cause to believe the gun was in the car and conducted a valid search to retrieve the gun. *See Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam) ("If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more."). There was probable cause to believe the gun and drugs were contraband in relation to drug trafficking because Officer Lichtsinn observed the gun as well as the white, powdery rock substance on the passenger's seat at the same time.

Even if Officer Lichtsinn only had reasonable suspicion at the time he searched the Defendant's vehicle for the gun, once he found the gun Officer Lichtsinn had probable cause to continue searching the Defendant's vehicle for other contraband. *Ledford*, 218 F.3d at 688 (finding that probable cause exists once there is a fair probability that contraband will be found in a particular place); *Jerez*, 108 F.3d at 693 (determining whether a reasonable suspicion exist[s], [the court] must consider the 'totality of the circumstances.' In the end, the analytical process requires a practical determination; it 'does not deal with hard certainties, but with probabilities.'") (citations omitted). As a practical matter, when Officer Lichtsinn observed the magazine end of a gun through an open car window there was a fair probability he would find contraband in a particular place. Even if Officer Lichtsinn only had reasonable suspicion when he saw the gun, there was certainly probable cause once Officer Lichtsinn confirmed that there was a gun in the Defendant's car. Officer Lichtsinn's search was valid because Officer Lichtsinn had probable cause that the Defendant's vehicle contained evidence of criminal activity. *Pennsylvania v. Labron*, 518 U.S. 938,

940 (1996); *Stotler*, 591 F.3d at 940; *United States v. Faison*, 195 F.3d 890, 893 (7th Cir. 1999).[4]

Because the police search was not illegal, the Court will deny the Defendant's Motion to Suppress the items Officer Lichtsinn recovered while searching the Defendant's vehicle.

**C.     Motion to Dismiss**

The Defendant asks this Court to dismiss this cause of action because the Government failed to preserve the Defendant's automobile. To prevail on a motion to dismiss a defendant must show the government's bad faith in destroying readily apparent exculpatory evidence without comparable means to obtain the evidence. *California v. Trombetta*, 467 U.S. 479, 488–89 (1984). When a defendant asserts as the basis for dismissal that the government failed to preserve evidence, the defendant must show more than simply that the evidence "*could* have been subjected to tests, the results of which *might* have exonerated the defendant." *Hubanks v. Frank*, 392 F.3d 926, 931 (7th Cir. 2004) (quoting *Arizona v. Youngblood*, 488 U.S. 51 (1988)). A defendant's due process rights are not violated unless the defendant can demonstrate: "(1) bad faith on the part of the government; (2) that the exculpatory value of the evidence was apparent before it was destroyed; and (3) that the evidence was of such a nature that the petitioner would be unable to obtain comparable evidence by other reasonably available means." *Id.* (citing *Trombetta*, 467 U.S. at 488–89).

In this case, the Defendant does not establish facts necessary to meet his burden under *Trombetta*. *See United States v. Aldaco*, 201 F.3d 979, 982–85 (7th Cir. 2000) (holding that the Defendant has the burden of showing that the three *Trombetta* factors are present) (citing *United*

---

[4] The Defendant relies on *Chimel v. California* in asserting that Officer Lichtsinn's search was not substantially contemporaneous with the Defendant's arrest. 395 U.S. 752, 762–63 (1969). The Court does not rely on the search incident to arrest exception, in upholding Officer Lichtsinn's search.

*States v. Watts*, 29 F.3d 287, 289–90 (7th Cir. 1994)). The Defendant argues that the Government's failure to preserve the car was knowing and intentional. The Defendant did not present evidence to the Court to establish the Government's alleged bad faith. The Government presented Detective Christopher McCarty's testimony that he processed the paperwork to sell the Defendant's car pursuant to a judgment in a forfeiture action in Allen County, Indiana. The Defendant has not rebutted this testimony or provided any evidence to establish that the Government's failure to preserve the car was in bad faith. Accordingly, the Court will deny the Defendant's Motion to Dismiss.

Additionally, the exculpatory value of the Defendant's car is not apparent. The fact that the testing of the tint on the Defendant's windows may exculpate the Defendant does not adequately establish the car's exculpatory value. *Hubanks*, 392 F.3d at 931. The Defendant testified that the rear window was more heavily tinted than the front passenger window. The Defendant also testified that he was able to see Officer Lichtsinn's uniform through the rear passenger side window. The Defendant's testimony establishes at least some visibility through the rear window. Officer Lichtsinn testified that he looked through the front passenger window, which was even easier to see through than the rear window. If the Defendant could see Officer Lichtsinn's uniform through the rear window then Officer Lichtsinn could very likely see the gun and drugs through the front window.

Even if testing the window's tint were to establish that Officer Lichtsinn could not see into the Defendant's car through either window, both Officer Lichtsinn and the Defendant testified that the Defendant rolled the window down far enough for Officer Lichtsinn to be able to see into the car unobstructed by the window. No matter the tint of the window, probable cause existed when

Officer Lichtsinn viewed the magazine end of the gun and white, powdery rock on the front passenger's seat once the Defendant rolled down the window. Therefore, testing the window tint is unlikely to provide the exculpatory value necessary to establish a deprivation of due process resulting from an inability to test the tint.

Finally, to establish a due process violation, the Defendant must establish that he cannot obtain comparable evidence by any other means. *Trombetta*, 467 U.S. at 488–89. The reason the Defendant sought to inspect his car for exculpatory evidence was to challenge what Officer Lichtsinn could have observed through the Defendant's window on November 18, 2008. However, the Defendant could also establish what was visible through his windows by using the photographs of the window's tint provided by the Government. Although these photos were not taken on the night of the Defendant's arrest, the Defendant could cross-examine Officer Lichtsinn regarding what he saw on the night of the arrest. The Defendant also directed his girlfriend to take photographs of his car while it was at the impound lot. All of the available alternatives to actually having the car establish that the Defendant had enough comparable evidence available through reasonable means that he is unable to establish a due process violation.

### D.     Defendant's Pro Se Reply [DE 99]

The Defendant, acting pro se, filed the Defendant's Reply to the Government's Response to Defendant's Memorandum in Support of Motion to Suppress [DE 99], on August 23, 2010. The Defendant filed his Reply directly with the Court and not through counsel, despite the fact that the Defendant has appointed counsel actively representing him. The Defendant is attempting to represent himself and be represented by counsel. However,

> [a] defendant in a criminal case has the right to represent himself or to be represented by counsel, but there is no right to both or a "hybrid" representation, 28 U.S.C. § 1654; *McKaskle v. Wiggins*, 465 U.S. 168, 104 S. Ct. 944, 953–54, 70 L. Ed. 2d 122 (1984); *United States v. Anderson*, 716 F.2d 446, 449 (7th Cir. 1983); *United States v. Trapnell*, 638 F.2d 1016, 1026–27 (7th Cir. 1980); in fact, courts have generally held that these two rights are mutually exclusive.

*United States v. Durden*, 673 F. Supp. 308, 309 (N.D. Ind. 1987); *see also Cain*, 972 F.2d at 749 ("Representation by counsel and self-representation are mutually exclusive entitlements."). Accordingly, the Court will strike the Defendant's Reply.[5]


## CONCLUSION

For the foregoing reasons, the Court DENIES the Defendant's Motion to Suppress Evidence [DE 25] and the Defendant's Motion to Dismiss [DE 75]. The Court ORDERS the Clerk of this Court to STRIKE the Defendant's Reply to the Government's Response to Defendant's Memorandum in Support of Motion to Suppress [DE 99] but the Reply is to remain part of the record. A Telephonic Final Pretrial Conference is set for Monday, September 13, 2010, at 11:00 AM. The Court will initiate the call. A Trial is scheduled to begin on Tuesday, September 28, 2010 at 8:30 AM before Judge Theresa L. Springmann.

SO ORDERED on September 2, 2010.

s/ Theresa L. Springmann  
THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT

---

[5] Even if the Court considered the Defendant's Reply it would not alter the outcome of this Motion to Suppress because the Defendant only presented arguments previously addressed in briefs filed by his Counsel.